**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND;** and **ARTHUR H. BUNTE, JR., as trustee,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **No. 10 C 2881**<br>**Judge Joan H. Lefkow** |
| **NATIONAL LUMBER COMPANY, a** Michigan Corporation; and **BRIGHTON ASSOCIATES, LLC, a Michigan limited liability company,** | ) ) ) ) ) | |
| **Defendants,** | ) ) | |
| **and** | ) ) | |
| **ANN ROSENTHAL, individually and as trustee of ANN ROSENTHAL REVOCABLE LIVING TRUST dated August 21, 1984, as amended; ALAN STRICKSTEIN, individually and as trustee of ALAN STRICKSTEIN REVOCABLE LIVING TRUST dated June 18, 1987, as amended; JAMES I. ROSENTHAL, individually and as trustee of JAMES I. ROSENTHAL DECLARATION OF TRUST dated March 11, 1993, as amended; ROCHELLE K. FORESTER, individually and as trustee of ROCHELLE K. FORESTER DECLARATION OF TRUST dated January 23, 1991, as amended; RONALD E. BITTKER, individually and as trustee of RONALD E. BITTKER REVOCABLE TRUST U/A/D March 29, 2000; ARLINE BITTKER, individually and as trustee of MARITAL TRUST UNDER THE DAVID L. BITTKER REVOCABLE LIVING TRUST dated May 8, 1986 as amended,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Intervenor-Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On August 3, 2010, this court entered a default judgment in favor of plaintiffs Central

States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr. ("Central States")

and against defendants National Lumber Company ("National Lumber") and Brighton

Associates, LLC ("Brighton") (collectively "defendants") in the amount of $7,158,658.76 for

withdrawal liability incurred by defendants pursuant to the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), as amended by the Multiemployer

Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 *et seq*.  On April 20, 2012, Central

States served a post-judgment request for production of documents on National Lumber

requesting, *inter alia*, all attorney-client and work product privileged material responsive to its

requests.  Three former members of National Lumber's board of directors and their family

members intervened, and they now move for a protective order precluding Central States from

obtaining these documents.  (Dkt. #17.)  For reasons discussed herein, their motion will be

granted in part and denied in part.

**BACKGROUND**[1]

On May 11, 2010, Central States filed a one count complaint in this court (the "present

case") alleging that National Lumber and Brighton were under "common control" and jointly

and severally liable for withdrawal liability as a "single employer" under ERISA.  *See* 29 U.S.C.

---

[1]  The court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, 29 U.S.C. §§ 1132(e)(1) and (f) and 1451(c) and ancillary jurisdiction over post-judgment proceedings.  Venue is proper in this district under 29 U.S.C. §§ 1132(e)(2) and 1451(d) because the pension fund is administered here and has its principal place of business here.

§ 1301(b)(1). National Lumber and Brighton declined to defend, and this court entered a default

judgment against them in the requested amount. (Dkt. #10.)

Almost one year later, Central States filed a two count complaint against Ann Rosenthal,

James I. Rosenthal, Alan Strickstein, Rochelle K. Forster, Ronald E. Bittker and Arline Bittker in

their individual capacities and as trustees for various trusts (collectively "intervenors"). The

case, No. 11-CV-3757, was assigned to Judge Kennelly. James I. Rosenthal, Alan Strickstein,

and Ronald E. Bittker are former National Lumber officers and directors; Ann Rosenthal is the

mother of James I. Rosenthal and Rochele K. Forester; and Arline Bittker is the mother of

Ronald E. Bittker. (Case No. 11 C 3757, Dkt. #1 ¶¶ 7, 11, 33–35.) Central States alleges that

intervenors transferred nearly one million dollars between September 1, 2007 and December 1,

2009 from National Lumber to various trusts for the purpose of evading or avoiding the payment

of withdrawal liability in violation of ERISA § 1392(c) (an amount represented by the judgment

in the present case) (count I). (*Id.* ¶ 36, 40–46.) Central States also seeks a declaration from the

court that any future payments to intervenors would constitute a transaction prohibited under the

trust fund theory of liability (count II). (*Id*. ¶¶ 47–57.)

On December 1, 2009, National Lumber's directors executed a trust mortgage with

McTevia & Associates, LLC ("McTevia" or "trustee") naming McTevia as trustee and granting

it a security interest in National Lumber's assets. (Case No. 10 C 2881, Dkt. #19 Ex. 2 at 1.)

The trust mortgage acknowledged that National Lumber had "experienced significant losses"

and it directed the trustee to "wind[] up its business," "liquidat[e] its assets and maximiz[e] the

value of its assets for the benefit of creditors." (*Id.* at 1.) To accomplish this goal, the trustee

was directed to "review the books, records and projections of [National Lumber] and make a

determination as to the best way to maximize the distribution to the creditors." (*Id.* at 4.) The

trust mortgage also authorized the trustee to "continue operating [National Lumber's business]

until such time as [National Lumber's] work in process is completed," provided that so doing is

in the interest of creditors. (*Id.*) Simultaneous with executing the trust mortgage, National

Lumber directors and officers James I. Rosenthal, Alan Strickstein and Ronald E. Bittker

resigned their positions, although they remain creditors and shareholders of the company.

(Intervenor's Mot. for Protective Order at 2.)

With discovery proceeding in Judge Kennelly's case, Central States issued a post-

judgment request for documents to National Lumber in the present case seeking, *inter alia*, all

attorney-client and work product privileged documents responsive to its requests. (Dkt. #19

Ex.1 at 6.)[2] Intervenors sought leave to intervene, which this court granted, and they now ask

this court to enter a protective order precluding Central States from obtaining attorney-client and

work product privileged documents from National Lumber. (Dkt. #17.)

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal

civil cases. Rule 26(b)(1) allows parties to discover information "regarding any nonprivileged

matter that is relevant to any party's claim or defense." Pursuant to Rule 26(c)(1), the court may,

"for good cause shown," enter a protective order "forbidding the disclosure or discovery" or

"forbidding inquiry into certain matters." Fed. R. Civ. P. 26(c)(1)(A) & (D). In deciding

whether good cause exists, the court must balance the interests of the parties, taking into account

the harm to the party seeking the protective order and the importance of the disclosure to the

---

[2] Central States also served a citation to discover assets on Brighton. (Dkt. #12.)

nonmoving party. *Wiggins* v. *Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). The party requesting

the protective order has the burden of demonstrating to the court that "good cause" exists for its

issuance. *Jepson, Inc.* v. *Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).

## ANALYSIS

Intervenors argue that a protective order is necessary because 1) as owners of National

Lumber, certain intervenors retain the right to invoke the company's attorney-client privilege

and the trustee has no authority to waive it; 2) in the alternative, the trustee has a duty not to

elevate one creditor's claims over another's by waiving the attorney-client privilege in favor of

Central States; and 3) the court should not compel the disclosure of attorney work product where

the attorney has asserted the privilege.[3]

## I.    Attorney-Client Privilege

The Seventh Circuit has adopted the following general principles of attorney-client

privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence (5) by the client, (6) are at his instance permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) except the protection [can]
> be waived.

---

[3] Intervenors also argue that the crux of the challenged requests relate to issues raised in Judge
Kennelly's case and as such, Judge Kennelly should have the "luxury" of deciding whether the requests
are proper. (Intervenor's Mot. for Protective Order at 4.) Central States counters that its requests are
aimed at ascertaining whether there are third parties who might be liable for National Lumber's
withdrawal and that their requests are relevant to the post-judgment proceedings in the present case.
Intervenors cite no legal authority for their position, and the court will not preclude Central States from
soliciting relevant information in this proceeding simply because it may be used against intervenors in
another action. *See generally* Fed. R. Civ. P. 69(a); *Evans* v. *Chicago Football Franchise Ltd.*, 127
F.R.D. 492, 493 (7th Cir. 1989).

*United States* v. *Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (citation omitted). "The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *Id.* The client is the holder of the attorney-client privilege and once the client discloses confidences to a third party, the privilege is deemed waived. *Eagle Compressors, Inc.* v. *HEC Liquidating Corp.*, 206 F.R.D. 474, 477 (N.D. Ill. 2002).

### A.    Whether the Trustee May Waive the Attorney-Client Privilege

It is a well-settled rule that the attorney-client privilege attaches to corporations as well as individuals, *see Upjohn Co.* v. *United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), and "for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 348, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985). Under this rule, the power to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation. *Id.* at 349; *Am. Int'l Specialty Lines Ins. Co.* v. *NWI-I, Inc.*, 240 F.R.D. 401, 405–06 (N.D. Ill. 2007). This rule recognizes that "[a] corporation acts through its agents, and . . . although the corporation is the client, the agents are the people who seek counsel for the corporation." *Dexia Credit Local* v. *Rogan*, 231 F.R.D. 268, 276–77 (N.D. Ill. 2004).

In *Commodity Futures Trading Commission* v. *Weintraub*, the Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications." 471 U.S. at 358. In *Weintraub*, the bankruptcy trustee sought to waive the debtor's attorney-client privilege against

claims by the company's directors who sought to assert it. In concluding that the privilege rested with the trustee, the Supreme Court considered "the roles played by the various actors of a corporation in bankruptcy to determine which is most analogous to the role played by the management of a solvent corporation." *Id.* at 351. The Court noted that the Bankruptcy Code gave the trustee wide-ranging management authority, including the power investigate the debtor's financial affairs, sue officers, directors and other insiders to recover on behalf of the estate, and to operate the debtor's business, even in liquidation albeit for a limited time. *Id.* at 351–52. In contrast, the directors' authority was "severely limited" and restricted to turning over the corporation's property to the trustee and providing certain information to the trustee and creditors. *Id.* at 352. "Given that the debtor's directors retain virtually no management powers," the Court concluded that "they should not exercise the traditional management function of controlling the corporation's attorney-client privilege." *Id.* at 353.

In the present case, the parties agree that the answer to the question of who has the authority to assert or waive the attorney-client privilege is dictated by who has control of National Lumber. Central States asserts that the trustee has control because all powers and duties of the company's directors and officers were transferred to the trustee and the trust mortgage granted the trustee the authority to operate the business. Intervenors counter that the trust mortgage granted the trustee only a security interest in National Lumber, and that certain intervenors remain the rightful owners of the company. Intervenors attempt to distinguish *Weintraub* by arguing that unlike a trustee in bankruptcy, the trustee is not charged with operating the business; rather its role is limited to that of a liquidator.

The roles played by the various involved individuals make it clear that the trustee exercises considerably more control over National Lumber than intervenors exercise. The trustee has the power to wind up the business, liquidate its assets and act for the benefit of creditors. It also has the power to continue operating National Lumber's business until its work in process is completed. Intervenors, on the other hand, maintain only an ownership interest in the company and do not possess any of the powers of the trustee. Intervenors fail to explain why, under these circumstances, their ownership interest trumps the authority of the trustee.

Moreover, none of the intervenors is currently a member of the board. Rather, the three intervenor board members resigned their positions when the trustee was appointed. Courts have consistently held that to invoke the attorney-client privilege on a company's behalf, the director or officer must be a current member of the management team. *See, e.g., Weintraub*, 471 U.S. at 349 ("New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers . . . ."); *Trading Techs. Int'l, Inc.* v. *GL Consultants, Inc.*, Nos. 05 C 4120, 05 C 5164, 2012 WL 874322, at *3 (N.D. Ill. Mar. 14, 2012) ("[A]ny privilege in the documents at issue remained with [the corporation] after [the officer's] departure; the privilege did not travel with him."); *Dexia Credit Local*, 231 F.R.D. at 277 ("[O]nce this agent leaves the corporation's employ, the privilege, and the legal rights associated with it, do not leave with this agent. Rather, the privilege remains with the corporation, because it belongs to the corporation."). As former directors or officers with limited, if any, control over

the company, intervenors cannot invoke the attorney-client privilege on behalf of National

Lumber.[4]

### B. Whether the Trustee is Forced to Choose Between Creditors

In the alternative, intervenors argue that the trustee should be prohibited from waiving

the attorney-client privilege because doing so would amount to the trustee elevating Central

States's claims to the company's assets above those of the intervenors. Intervenors cite the

Bankruptcy Code and related cases to support their position. *See* 11 U.S.C. § 704 (setting out

the duties of a trustee in bankruptcy); *id.* § 547 (instructing a trustee in bankruptcy to avoid

preferential transfers); *Young* v. *Higbee Co.*, 324 U.S. 204, 210, 65 S. Ct. 594, 89 L. Ed. 890

(1945) (stating that "one of the prime purposes of the bankruptcy law . . . [is] to protect the

creditors from one another"). To this court's knowledge, National Lumber has not filed a

bankruptcy petition and its trustee is not a trustee in bankruptcy. As such, the trustee is not

bound by the Bankruptcy Code but rather by the trust mortgage, which instructs it to act "for the

benefit of all creditors." (Dkt. #19 Ex. 2 at 4 ¶ 2.) The trustee is no doubt familiar with its duties

under the trust mortgage and may determine for itself whether waiving National Lumber's

attorney-client privilege is consistent with its obligations. The Bankruptcy Code does not apply

and the cases cited by intervenors are inapposite.

---

[4] Intervenors cite *Federal Deposit Insurance Corporation* v. *Amundson* for the position that where a company ceases to exist, the attorney-client privilege does not transfer to the party performing the liquidation. 682 F. Supp. 981 (D. Minn. 1988). In *Amundson*, the party seeking to assert the privilege was the purchaser of debtor's assets and the issue presented to the court was whether a conflict of interest prevented the debtor's former attorney from representing a former director in an action brought against him by the purchaser. *Id.* at 983–84. *Amundson* has little bearing on this case and is distinguishable on its face.

### C.      Whether A Protective Order Should Issue

Pursuant to Rule 26(c)(1), the court may only issue a protective order for "good cause" and the party requesting the order bears the burden of establishing "good cause." Fed. R. Civ. P. 26(c)(1); *Jepson*, *Inc.*, 30 F.3d at 858. Having concluded that the trustee is in control of National Lumber and able to assert or waive the attorney-client privilege on its behalf, the court concludes that intervenors have not met their burden. Their motion for a protective order as to attorney-client privileged documents is denied.[5]

## II.      Work Product Privilege

Intervenors next argue that the court should not compel work product privileged documents to be produced where the attorney has exercised his right to assert the privilege. The work product doctrine, first announced in *Hickman* v. *Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the materials are "otherwise discoverable" and the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The work product privilege also protects the "mental impressions, conclusions, opinions, or legal theories" of an attorney. Fed.

---

[5] Intervenors state that the same attorney that represented National Lumber also represented them in their individual capacities and that allowing the trustee to waive the privilege as to National Lumber would allow Central States to access privileged documents held by the attorney related to other matters. The sole issue before the court is whether the trustee may waive the attorney-client privilege on the company's behalf. To the extent that intervenors believe that another legal theory prevents production, they have not presented that theory to the court. Intervenors argue that if the trustee waives the privilege on behalf of National Lumber that Central States will have access to documents prepared by National Lumber's attorney while he worked for intervenors in their individual capacities (*i.e.*, estate planning and legal issues related to their other businesses). If the attorney has privileged information that arises independently of National Lumber, this ruling does not apply to that information.

R. Civ. P. 26(b)(3)(B); *Hickman*, 329 U.S. at 510–11.  "Unlike the attorney-client privilege, the

attorney has an independent privacy interest in his work product and may assert the

work-product doctrine on his own behalf; the doctrine's protection is not waived simply because

the attorney shared the information with his client."  *Sandra T.E.* v. *S. Berwyn Sch. Dist. 100*,

600 F.3d 612, 618 (7th Cir. 2009).

Central States seeks all work product material prepared by Harry M. Eisenberg, National

Lumber's former attorney.  (*See* Dkt. #19 Ex. 1 at 6.)   Eisenberg has represented National

Lumber on various legal matters over the past two decades, and as the company's former

attorney, Eisenberg has a right to assert the work product privilege over documents that fall

within the scope of the privilege, which he has done.  (Dkt. #25 Ex. 1 Eisenberg Aff. ¶¶ 2, 4–6,

8.)  Assuming that all of the other essential elements of the privilege are met, intervenors are

correct that National Lumber is protected from producing this material.  Good cause exists for

limiting the disclosure of attorney work product because obtaining such material would "confer

an unfair advantage to a lawyer by allowing him to advance his case based on the work of

another attorney, and to unfairly have access to material which would allow him to counteract

the other attorney's strategy."  *Allendale Mut. Ins. Co.* v. *Bull Data Sys., Inc.*, 152 F.R.D. 132,

135 (N.D. Ill. 1993).  Intervenor's motion for a protective order precluding Central States from

discovering documents (1) that qualify as attorney work product and (2) over which National

Lumber's attorney has asserted the privilege is therefore granted.

Whether all the essential elements of the privilege are met remains an open question,

however.[6]  To allow Central States to assess the validity of attorney Eisenberg's privilege

---

[6] For example, documents prepared in the regular course of business are not protected, and facts
(continued...)

claims, National Lumber is directed to work with Eisenberg to prepare a privilege log within 14

days of this order pursuant to Rule 26(b)(5)(A) setting forth a document-by-document

description of the facts supporting the asserted privilege.  *See* Fed. R. Civ. P. 26(b)(5)(A);

*Novelty, Inc.* v. *Mountain View Mktg., Inc.*, 265 F.R.D. 370, 380 (S.D. Ind. 2009).  Any dispute

as to the scope of the privilege should be noticed before this court for resolution.

<h2 style="text-align:center">CONCLUSION AND ORDER</h2>

For the foregoing reasons, intervenors' motion for a protective order precluding Central

States from obtaining attorney-client and attorney work product material from National Lumber

is granted in part and denied in part.  The motion is granted as to attorney work product material

over which National Lumber's attorney has asserted the work product privilege, and denied as to

attorney-client privileged material.  National Lumber is directed to respond to Central States's

requests and produce a privilege log listing all responsive attorney work product material

pursuant to Federal Rule of Civil Procedure 26(b)(5) within 14 days of this order.

ENTER:_____

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: July 11, 2012

---

(...continued)
are not protected even if the document itself is shielded from disclosure.  *See In re ANR Advance Transp. Co.*, 302 B.R. 607, 615 (E.D. Wis. 2003).